1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney

2  BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  THOMAS R. GREEN (CABN 203480)
   Assistant United States Attorney

       1301 Clay Street, Suite 340S
       Oakland, CA 94612
       Telephone: (510) 637-3695
       Fax: (510) 637-3724
       E-Mail: Thomas.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>CHRISTOPHER WHITTLE,<br><br>    Defendant. | NO. 16-00042 JD<br><br>**UNITED STATES' MOTION FOR DEPARTURE AND SENTENCING MEMORANDUM**<br><br>Time: 2:00 PM<br>Date: November 10, 2016<br><br>Hon. James Donato |

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| | A. Offense Conduct | 1 |
| | B. Victim Impact | 2 |
| | C. Sentencing Guideline Range and Plea Agreement | 3 |
| | D. Defendant's Cooperation | 3 |
| III. | GOVERNMENT'S SENTENCING RECOMMENDATION | 4 |
| | A. United States' Motion Pursuant to Sentencing Guideline Section 5K1.1 for a Downward Departure Based on Defendant's Substantial Assistance to Authorities | 4 |
| | B. Section 3553(a) Factors | 6 |
| |    1. The Seriousness of the Offense | 6 |
| |    2. Nature and Circumstances of the Offense | 7 |
| |    3. The Need to Deter Criminal Conduct and Protect the Public | 7 |
| IV. | RESTITUTION | 7 |
| | A. Background | 7 |
| | B. Restitution is Mandatory | 11 |
| |    1. Causation | 11 |
| |    2 Apportionment | 11 |
| V. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*New York v. Ferber*, 458 U.S. 747 (1982) .................................................................................. 6

*Paroline v. United States*, ___ U.S. ___, 134 S.Ct 1710 (2014)............................................ 6, 8, 9

*United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015) ...................................................... 10, 11

## FEDERAL STATUTES

18 U.S.C. § 2252(a)(2)................................................................................................................ 1

18 U.S.C. § 2252(a)(4)(B) .......................................................................................................... 1

18 U.S.C. § 2259(a) .................................................................................................................... 7

18 U.S.C. § 2259(b)(1) ............................................................................................................. 14

18 U.S.C. § 2259(b)(4)(A) ......................................................................................................... 8

18 U.S.C. § 3553(a) ................................................................................................................ 3, 4

18 U.S.C. § 3664(d)(5) ..................................................................................................... 1, 8, 13

**I. INTRODUCTION**

On February 4, 2016, a grand jury returned a two-count Indictment charging the defendant, Christopher Whittle, with a violation of 18 U.S.C. § 2252(a)(4)(B), Possession of Child Pornography, and 18 U.S.C. § 2252(a)(2), Distribution of Child Pornography. The Indictment also includes a forfeiture allegation. On July 14, 2016, the defendant pleaded guilty to Count 1 pursuant to a Rule 11(c)(1)(C) plea agreement in which the parties agreed to, among other things, a sentence of at least 36 months in prison to be followed by 15 years of supervised release. The government respectfully requests that the Court accept defendant's guilty plea and the plea agreement, and sentence defendant to 36 months in custody, which represents a downward departure supported by defendant's substantial cooperation in this case—cooperation he provided upon his arrest without waiting for the negotiations of a favorable deal in exchange for his cooperation. The government also requests that the Court order an expanded search condition and limitation on future internet use, as described in the Sentencing Recommendation from the Probation Office, forfeiture, and a mandatory special assessment of $100 per count.

In connection with the instant case, the government received restitution claims from five victims depicted in the files possessed by the defendant. These victims are "Casseaopeia," from the *Lighthouse* Series, "Jane," from the *Cinder Block Blue* series, and three victims from the *Sweet Sugar* series, "Pia," "Ava," and "Mya." The restitution request from the victims in the *Sweet Sugar* series was only received on October 27, 2016, and as a result the government has not yet had an opportunity to fully those restitution claims. This is a newer series. The victims in this series have yet to receive restitution in other cases and additional work is required to confirm which of the three victims are depicted in the *Sweet Sugar* series images and video recovered from the defendant's devices. Accordingly, pursuant to 18 U.S.C. § 3664(d)(5), the government respectfully requests that the restitution portion of the three recent victims from the *Sweet Sugar* series be continued for 90 days.

**II. BACKGROUND**

    **A. Offense Conduct**

The factual statement of the plea agreement and the Probation Officer's Presentence Report ("PSR") accurately set forth the facts, and the government will not repeat them at length here. The PSR

sets forth the factual basis for the application of the base offense level of conduct and each of the sentencing enhancements applicable in this case.

In summary, defendant came into contact with law enforcement personnel both in the United States and New Zealand in connection with separate investigations initiated when defendant shared child pornography files with law enforcement officers acting in an undercover capacity. Those investigations ultimately led to identifying defendant as the person trading child pornography and a search warrant being executed at his residence. Several thousand images of child pornography were ultimately recovered from devices seized during the execution of the search warrant, of which, 647 images and 43 videos depicted images of known victims identified by the National Center for Mission and Exploited Children ("NCMEC"). Agents also recovered numerous chat conversations in which the defendant articulated an interest in meeting and engaging in sexual conduct with a mother and her child. No evidence was otherwise located indicating that defendant has engaged in hands on offenses with any minors.

### B. Victim Impact

Across more than 1,000 images and videos recovered from defendant's devices and on-line accounts agents identified 647 images and 43 videos depicting previously identified victims across 142 known child pornography series. PSR ¶ 51. Victims from nine (9) of those series submitted victim impact statements, which the government understands were submitted to the Court in connection with the PSR. PSR ¶ 52.

The letters describe both the abuse that the victims suffered in being raped and abused, and the long term damaging effects of the trauma they suffered as children, with one letter explaining how as an adult, the victim is "terrified that someone is stalking [her]." *Id*. The victim goes on to state, "I have changed my appearance so they can't find me, but I still have panic attacks when I think someone is looking at me because they recognize me from the internet. I have difficulty working or being in public because of anxiety and want to hide somewhere safe." *Id*. As mentioned above, victims in three series submitted restitution requests, which are discussed in greater detail in Part IV of this Sentencing Memorandum.

**C.  Sentencing Guideline Range and Plea Agreement**

The defendant pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement, and the parties agreed to the following Guidelines calculation:

| | | | |
|---|---|---|---|
| a. | Base Offense Level:<br>(U.S.S.G. §2G2.2(a)(1)): | | 18 |
| b. | Specific Offense Characteristics: | | |
| | Material involved prepubescent minor (U.S.S.G. §2G2.2(b)(2)): | | +2 |
| | Offense involved distribution (U.S.S.G. §2G2.2(b)(3)(F)): | | +2 |
| | Offense involved sadistic or masochistic conduct or other depictions of violence (U.S.S.G. §2G2.2(b)(4)): | | +4 |
| | Offense involved use of computer (U.S.S.G. §2G2.2(b)(6)): | | +2 |
| | Offense involved more than 600 images (U.S.S.G. §2G2.2(b)(7)(D)): | | +5 |
| c. | Acceptance of Responsibility: If I meet the requirements of U.S.S.G. §3E1.1, I may be entitled to a three-level reduction. | | -3 |
| d. | Adjusted Offense Level: | | 30 |

A total offense level of 30 and Criminal History Category I results in a sentencing range of 97 to 121 months. As discussed later in this Memorandum, the government believes a sentence of 36 months, to be followed by 15 years of supervised release, is appropriate on account of defendant's cooperation and pursuant to the factors set forth in 18 U.S.C. § 3553(a).

The PSR and the probation officer's recommendation are not in conflict with the government's recommendation, as the probation officer's recommendation does not take into account the cooperation defendant provided, as discussed further below. The departure recommended by the government is based only on defendant's cooperation, and the government would have concurred with the probation officer's recommendation in the absence of defendant's substantial cooperation. The 15 year supervised release period goes beyond the recommendation of the probation officer, in large part because of the shorter period of incarceration recommended by the government.

**D.  Defendant's Cooperation**

As described further below, defendant cooperated with the investigating agency from the moment agents executed the search warrant of his home. He directed agents to incriminating evidence, and more importantly provided agents with his on-line identities which enabled law enforcement

agencies in the United States and abroad to initiate at least 18 investigations into other persons suspected of child exploitation crimes.

### III. GOVERNMENT'S SENTENCING RECOMMENDATION

A 36 month sentence, which represents a downward departure of approximately 5 years from the low-end of the applicable Guidelines agreed to by the parties, would fulfill the mandate of 18 U.S.C. § 3553(a), including the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and protect the public from further crimes by the defendant, taking into account the substantial cooperation of the defendant. Pursuant to 18 U.S.C. § 3553(a), the sentence must also take into account the nature and circumstances of the offense and the history and characteristics of the defendant.

#### A. United States' Motion Pursuant to Sentencing Guideline Section 5K1.1 for a Downward Departure Based on Defendant's Substantial Assistance to Authorities

The United States moves pursuant to section 5K1.1 of the Sentencing Guidelines for a downward departure from the 97 to 121 month guideline sentence defendant faces. The government recommends a sentence of 36 months to account for defendant's substantial cooperation, and bases its recommendation on the factors outlined under section 5K1.1(a) of the guidelines.

(1) <u>The Significance and Usefulness of Defendant's Assistance</u>. Defendant admitted his guilt and voluntarily provided the investigating agency, the Department of Homeland Security, with his on-line identities and passwords during the execution of the search warrant. Later that day, federal agents logged into defendant's on-line accounts and began their impersonation of the defendant in communities where persons meet other persons interested in trading child pornographic image and video files and otherwise engaging with the community of such interested persons. As a direct result of defendant's assistance, 17 investigations have been initiated to date and four persons have been arrested, including domestic charges having been brought in Pensacola, Florida and the Western District of Missouri, and foreign arrests made on the Island of Jersey and in Calgary, Alberta. The defendant in Pensacola has pled guilty and awaits sentencing. The other cases are all pending. The Department of Homeland Security may generate additional leads moving forward as they still operate the accounts defendant consented to the government controlling.

(2) <u>The Truthfulness and Reliability of the Information Defendant Provided</u>. Defendant's information enabled law enforcement to initiate the undercover operations, investigations and arrests made to date. There is no reason to doubt the accuracy or completeness of the information defendant provided.

(3) <u>The Nature and Extent of Defendant's Assistance</u>. Defendant's cooperation was essentially complete upon his willingness to provide his on-line identities in a timely fashion.

(4) <u>The Risk of Injury or Danger to Defendant or His Family</u>. The government is not aware of any risk defendant took other than potentially risking his own reputation in the communities of persons exploiting children, a risk which should not entitle defendant to any credit by itself.

(5) <u>The Timeliness of Defendant's Assistance</u>. The timeliness of defendant's cooperation, which was essentially immediate, is a primary factor underlying the government's recommendation. The number of leads generated by defendant's cooperation would not have been possible without the defendant instantaneously providing HSI agents with permission to assume his on-line identities during the execution of the search warrant. Because illicit websites and chat rooms used to exchange child pornography frequently change or are shut down to avoid detection, it is highly unlikely defendant's cooperation would have enabled HSI agents to generate the investigative leads they generated without defendant's immediate cooperation, i.e. his passwords still worked at the time of the search warrant and the agents have continued to receive updated information about new chat rooms by continuing to impersonate defendant since his identities were assumed. Moreover, defendant provided this assistance without any assurance of obtaining credit for cooperating. The Department of Homeland Security indicates that had defendant waited to provide his cooperation until after he had retained a lawyer to negotiate his cooperation in the form of a cooperator plea agreement, the chat rooms to which he once belonged would have likely grown stale and subsequent efforts to impersonate him would not have been possible. The government concludes that defendant should be credited for his timely cooperation despite having no assurance that he may receive credit for his cooperation.

//

//

//

### B. Section 3553(a) Factors

#### 1. The Seriousness of the Offense

The Supreme Court recently opined on the seriousness of child pornography possession, specifically the harm the crime causes to victims. *See Paroline v. United States*, ___ U.S. ___, 134 S.Ct 1710 (2014). In *Paroline* the issue before the Court was what restitution a defendant owed to a victim when he possessed images of her on his computer, and the Court's spoke powerfully of the type of harm possession of child pornography creates for the victims: "The harms caused by child pornography, however, are still more extensive because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation." *Id.* at 1716-17, *quoting*, *New York v. Ferber*, 458 U.S. 747, 759 (1982). The Court stated, "[b]ecause child pornography is now traded with ease on the Internet, 'the number of still images and videos memorializing the sexual assault and other sexual exploitation of children, many very young in age, has grown exponentially.'" *Id. quoting,* United States Sentencing Comm'n, P. Saris et al., Federal Child Pornography Offenses 3 (2012).

The Court recognized that possession of child pornography is not a passive crime: "[t]hese crimes were compounded by the distribution of the images of her abuser's horrific acts, which meant the wrongs inflicted upon her were in effect repeated; for she knew her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed against her." *Id.* The government points out the Supreme Court's comments in *Paroline* here not in order to make a case for restitution (which is discussed below), but because the Court unequivocally recognized the real harm to real human beings that results from the conduct in which the defendant and millions of others engage.

The impact statements received from the individuals whose images the defendant possessed demonstrate that the possession and distribution of child pornography creates ongoing harm to the child-victims. As many of the children write, the enduring and harmful ramifications of the original sexual abuse are compounded by the seemingly-endless dissemination and viewing of it by others, like the defendant.

//

### 2. Nature and Circumstances of the Offense

The nature and circumstance of defendant's offense are well described in the PSR and in the recommendation of the probation officer. As is too often the case in possession/distribution cases, defendant was caught using an on-line application to share child pornography, including child pornography depicting the penetration of young children. Defendant had more than one thousand images in his possession, which constitutes a large number but not an atypical number of images in the internet era. Disturbing chat conversations were also recovered from the defendant's devices, including a chat demonstrating defendant's interest in meeting a mother and her child for a sexual encounter, as detailed in the PSR. The government is not aware of additional evidence specific to this defendant which would further shed light as to whether or not defendant ever acted on any of the fantasies expressed in the chats, or whether he had intention of acting on such a fantasy if presented with the opportunity to do so.

### 3. The Need to Deter Criminal Conduct and Protect the Public

The defendant promptly admitted his guilt, and provided substantial cooperation, without waiting to negotiate a favorable plea in exchange for his cooperation, and in that sense has assisted the government's efforts to protect the public at large. A substantial term of supervised release is recommended by the government on account of the short sentence the government recommends, to provide some level of deterrence and protection of the public after defendant completes service of his sentence, should the short sentence recommended by the government be ordered by the Court. This sentence also will protect the public, especially young children, from the defendant by removing him from society for a meaningful period of time and setting forth strict supervisory conditions for him to meet upon his release.

## IV. RESTITUTION

### A. Background

In connection with the instant case, five victims seek restitution pursuant to 18 U.S.C. § 2259(a). These victims are known as "Casseaopeia," from the *Lighthouse* Series, "Jane," from the *Cinder Block Blue* series, and three victims from the *Sweet Sugar* series, "Pia," "Ava," and "Mya." The materials submitted by counsel representing victims from the *Lighthouse* series, the *Cinder Block Blue* series and

the *Sweet Sugar* series are included as Exhibits 1 through 3 to the United States' Sentencing Memorandum, filed separately under seal. Based on these submissions, and as discussed below, the government asks that the Court order the defendant to pay restitution to each of the victims. Specifically, the government requests that the Court order the defendant to pay restitution as follows: $2,500 each to "Casseaopeia" and "Jane, with restitution as the Sweet Sugar series victims at a later date.

Because the government only recently received the restitution requests for "Pia," "Ava," and "Maya" and is still working to identify whether all three of the victims are depicted in images and video recovered from the defendant relating to the *Sweet Sugar* series, the government respectfully requests that the restitution portion of the sentencing for "Pia," "Ava," and "Maya" be continued for 90 days. 18 U.S.C. § 3664(d)(5) states that if "the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."

Restitution in this case is mandatory. Title 18, United States Code, Section 2259(a) provides that "the court shall order restitution for any offense under this chapter." Section 2259(b)(4)(A) states that [t]he issuance of a restitution order under this title is mandatory." Like possession of child pornography, Section 2259 falls within Chapter 110. Once the statute is satisfied, "[t]he court may not decline to issue an order under this section because of: (i) the economic circumstances of the defendant; or (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or some other source." *Id.* For purposes of § 2259, the term "victim" means "the individual harmed as a result of a commission of a crime under this chapter." *Id.*

In *Paroline*, the issue before the Court was whether a defendant who possessed pornographic images of a child-victim is liable for restitution to that victim years later for all or part of the financial losses the victim incurred for expenses such as counseling and lost income as a result of the trauma experienced from the continual dissemination of her images to thousands of individuals such as the defendant. *Paroline*, *supra*, 134 S.Ct. at 1716-18. The Court found that liability for restitution was appropriate under these circumstances, holding that "[t]he cause of the victim's general losses is the

trade of her images. And Paroline is part of that cause, for he is one of those who viewed her images." *Id.* at 1726. "While it is not possible to identify a discrete, readily definable incremental loss he caused, it is indisputable that he was part of the overall phenomenon that caused her general losses." *Id.*

The Court held that restitution is mandatory when the victim establishes losses caused by the trafficking of the victim's images:

> "Where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comparts with defendant's relative role in the causal process that underlies the victim's general losses."

*Id.* at 1728.

The Court was adamant that the statute requires restitution in these cases, even when the loss attributable to a single defendant cannot be established concretely:

> "Denying restitution in cases like this would also be at odds with the penological purposes of § 2259's mandatory restitution scheme. In a sense, every viewing of child pornography is a repetition of the victim's abuse. One reason to make restitution mandatory for crimes like this is to impress upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims…It would be inconsistent with this purpose to apply the statute in a way that leaves offenders with the mistaken impression that child-pornography possession (at least where the images are in wide circulation) is a victimless crime."

*Id.* at 1727.

The Court held that "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general [aggregate] losses." *Id*. at 1727. As for the causal connection between the offense and injury, there is no need to prove loss or causation in regards to any particular offender – it is the harm inflicted by the aggregated conduct of offenders that is primarily relevant. *Paroline*, 134 S.Ct. at 1726-1727. To the extent a defendant engaged in certain aggravating conduct, that can be considered, but there is no requirement to prove particularized conduct leading to particularized harm. *See id*. All that matters is that a victim's loss was generally attributed to the trafficking and viewing of the victim's images. The materials submitted by the victims as attached to this memorandum easily exceed that burden of proof.

The size of any given defendant's portion should be determined by the district court, in its

exercise of its discretion. *Id.* at 1728.  The Court emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts will have to exercise "discretion and sound judgment" in fashioning awards. *Id.*  The Supreme Court advised that district courts may start their calculations by determining "the amount of any victim's losses caused by the continuing traffic in the victim's images (excluding, of course, any remote losses …)."  In determining the share of those losses for which a particular defendant should be held liable, courts may then consider a variety of factors which "could include":

- "the number of past criminal defendants found to have contributed to the victim's general losses";
- "reasonable predictions of the number of future [defendants] likely to be caught and convicted for crimes contributing to the victim's general losses";
- "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted)";
- whether the defendant distributed the images;
- whether the defendant contributed to the original production;
- how many images the defendant possessed; and
- other facts relevant to the defendant's relative causal role.

*Id*. at 1728.  The Court stated that these factors should "serve as rough guideposts for determining an amount that fits the offense." *Id.*  It added that "the factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. *Id*.

The Supreme Court recognized that "[t]his approach is not without its difficulties." *Paroline*, at 1729.  "[C]ourts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake:  that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others." *Id.*  Recently, the Ninth Circuit addressed the unresolved question in *Paroline* about "whether it is proper to make the restitution calculation without excluding the ongoing losses to [the victim] due to the actions of the original abuser." *United States v. Galan*, 804 F.3d 1287, 1289 (9th Cir. 2015).  The Court in *Galan* held

that "in calculating the amount of restitution to be imposed upon a defendant who was convicted of distribution or possession of child pornography, the losses, including ongoing losses, caused by the original abuse of the victim should be disaggregated from the losses caused by the ongoing distribution and possession of images of that original abuse, to the extent possible. *Id.* at 1291.

### B. Restitution is Mandatory

#### 1. Causation

Counsel on behalf of the individuals known as "Casseaopeia," "Jane," "Pia," "Ava," and "Maya" have submitted claims for restitution. The government has provided those claims to the Court, Probation Officer, and defense counsel. In each case, the defendant possessed the victim's images and each victim has established "outstanding losses caused by the continuing traffic in those images." *Paroline* S.Ct. at 1727. The victims' attorneys have submitted documentation quantifying the harm. Each victim has requested that the defendant pay a larger amount than what the government recommends here. The government's requests for restitution apportioned to the defendant are based on the victims' submissions as well as the government's analysis of the *Paroline* factors.

#### 2. Apportionment

The first step in the analysis is to "determine the amount of the victim's losses caused by the continuing traffic in [her] images." *Paroline*, at 1728.

(i) "Casseaopeia"

Counsel for the victim known as "Casseaopeia" has submitted a request asking that the Court order the defendant to pay no less than $12,000 for one image of Casseaopeia (out of a total estimated economic loss of approximately $1,078,159), and that the total be revised upward for multiple images. *See*, Exhibit 1, Letter from Sara J. Powell, at LM-1601 – LM-1602. The government requests that the Court enter a restitution order of $2,500. The government submits the following information pertaining to the *Paroline* factors as to Casseaopeia.

a. <u>Past Criminal Defendants Who Have Contributed</u> – Counsel for "Casseaopeia" reports that a total of $229,250 in restitution to "Casseaopeia" had been ordered. Of that, $63,300.00 has been paid. The Child Exploitation and Obscenity Section ("CEOS") of the U.S. Department of Justice has started to compile information provided by federal prosecutors pertaining to

restitution ordered by sentencing courts for specific victims. The CEOS data sheds additional light on restitution payments, at least for federal defendants. The current data collected by CEOS for restitution orders for the Lighthouse series is provided in the CEOS chart attached to accompanying Declaration filed under seal as Exhibit 1. The government notes that the information in the chart relies on data reported only by federal prosecutors, and there is no mandatory reporting obligation of this information. The chart shows that for *reported cases,* sentencing courts have ordered restitution paid to the victims of that series, which includes "Casseaopeia", in 52 federal cases with amounts varying from $500 to $50,000. *See*, Exhibit 2. The chart does not provide any information on whether any of these defendants have started paying restitution to Casseaopeia or whether they are (or will be) in a financial position to pay at all.

        b.      <u>Reasonable Predictions of Future Offenders Likely to be Caught/Convicted</u> – This factor is impossible to estimate with any degree of certainty.

        c.      <u>Reasonable Estimate of the Broader Number of Offenders Involved</u> – The government did not receive any information from NCMEC regarding this specific victim in the Lighthouse series.

        d.      <u>Whether the defendant Reproduced or Distributed Images</u> – The government cannot establish that the defendant reproduced or distributed images of the victim known as "Casseaopeia."

        e.      <u>How many Images of the Victim the defendant Possessed</u> – The defendant possessed 13 images and one video from the Lighthouse series.

In light of all the available information, a restitution award of $2,500 is appropriate, and is neither "nominal" nor "token."

      (ii)    "Jane"

Counsel for the victim known as "Jane" (the Cinder Block Blue series) has requested that the Court order the defendant to pay $3,000 in restitution. *See*, Exhibit 2, May 18, 2016 Letter of Bruce Boyer of the Loyola *Civitas* Child Law Clinic. After considering the materials submitted on behalf of Jane by counsel and the *Paroline* factors, the government requests that the Court order the defendant to pay $2,500 in restitution to Sarah.

|   |   |
|---|---|
| 1 | a. <u>Past Criminal Defendants Who Have Contributed</u> |

The current data collected by CEOS for restitution orders for Sarah is provided in the chart attached to accompanying Declaration filed under seal as Exhibit 2. The CEOS chart indicates that federal courts only started ordering restitution to Jane in 2015. *See* Exhibit 2 (CEOS excel spreadsheet report). Data from CEOS indicates that federal courts have ordered 7 defendants to pay restitution in amounts ranging from $500 to $3,000. *Id*.

b. <u>Reasonable Predictions of Future Offenders Likely to be Caught/Convicted</u> – This factor is impossible to estimate with any degree of certainty.

c. <u>Reasonable Estimate of the Broader Number of Offenders Involved</u> – The government did not receive any information from NCMEC regarding this specific victim in the Cinder Block Blue series.

d. <u>Whether the defendant Reproduced or Distributed Images</u> – The government cannot establish that the defendant reproduced or distributed images of the victim known as "Jane"

e. <u>How many Images of the Victim the defendant Possessed</u> – The defendant possessed six images of the victim known as Jane.

In light of all the available information, a restitution award of $2,500 is appropriate, and is neither "nominal" nor "token."

(iii) Pia," "Ava," and "Maya" from the *Sugar Sweet* series. Pursuant to 18 U.S.C. § 3664(d)(5), the government respectfully requests that the restitution portion of sentencing for the three recent victims from the *Sweet Sugar* series be continued for 90 days. Three months should be sufficient time for the government to work with counsel for the victims to determine which victims are depicted in the images and video recovered from defendant and better inform the court of the factors underlying an appropriate restitution award. The United States notes that each victim has requested restitution of at least $5,000.

Consideration of the factors suggested by the Court in *Paroline* demonstrates how difficult it is to arrive at a figure that is an appropriate an amount of restitution that the defendant should pay toward the victims known as "Casseaopeia" and "Jane." The *Paroline* Court's discussion of the harm that is

suffered by victims of the crime that the defendant committed, combined with the very real impacts in "Casseaopeia" and "Jane's" victim impact statements make it clear that the defendant should be held accountable for some amount of restitution to these victims. An expert retained by "Jane's" attorney has calculated losses "Jane" has or will suffer as being "as high as $7,749,603," and seeks $3,000 in restitution from defendant. *See* Exhibit 2. This amount includes medical expenses, psychological evaluations, attorney's fees, and future lost earnings, among other things.

An award of $2,500 to each victim is neither "severe" nor "nominal." This amount, though not huge, will contribute to assisting the victim in paying for the costs of therapy and will contribute to holding the defendant accountable for the financial impact of his offense. As the *Paroline* Court stated, the purposes of restitution are not only to compensate, but to "impress upon offenders that their conduct produces concrete and devastating harms for real, identifiable harm." *Id*. at 1727. The circumstances of this case squarely fit within those that the Court described as requiring an order of restitution under 18 U.S.C. § 2259(b)(1).

## V. CONCLUSION

For the reasons discussed above, the government respectfully requests that the Court accept the parties' Rule 11(c)(1) plea agreement, grant a downward departure on account of defendant's cooperation and impose a 36-month sentence and order fifteen years of supervised release, restitution, forfeiture, and a $100 special assessment. The government also respectfully requests that the Court order that the defendant pay $2,500 in restitution to "Casseaopeia," and "Jane" each, and set for further hearing a determination regarding restitution for "Pia," "Ava," and "Maya."

Dated: November 3, 2016

BRIAN J. STRETCH
United States Attorney

/s/
THOMAS R. GREEN
Assistant United States Attorney

UNITED STATES' MOTION FOR DEPARTURE AND SENTENCING MEMORANDUM
CR 16-00042 JD

14

# EXHIBITS 1-3

Regarding: EXHIBITS 1-3 UNDER SEAL

This filing is in paper or physical form only, and is being maintained in the case file in the Clerk's office. If you are a participant on this case, this filing will be served in hard-copy shortly. For information on retrieving this filing directly from the court, please see the court's main web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

This filing was not e-filed for the following reasons:

EXHIBITS 1-3 UNDER SEAL

UNITED STATES' MOTION FOR DEPARTURE AND SENTENCING MEMORANDUM
CR 16-00042 JD

15